IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 1, 2023 Session

**THOMAS EDWARD CLARDY v. STATE OF TENNESSEE**

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Davidson County
No. 2006-B-1065   Jennifer Smith, Judge**

_____

**No. M2021-00566-SC-R11-ECN**

_____

The prisoner in this case filed a petition for a writ of error coram nobis long after expiration of the one-year limitations period and sought tolling of the statute of limitations. The petition was filed under the tolling exception to the coram nobis statute of limitations adopted by this Court in *Workman v. State*, 41 S.W.3d 100 (Tenn. 2001). The coram nobis court held a hearing on whether to toll the statute of limitations. It accepted the factual allegations in the coram nobis petition as true, but determined that the new evidence did not show that the petitioner was actually innocent of the crimes of which he was convicted, so he was not entitled to tolling of the statute of limitations. Consequently, the coram nobis court dismissed the petition as untimely. The Court of Criminal Appeals reversed the coram nobis court on the tolling exception, reversed the dismissal for untimeliness, and remanded for a hearing on the allegations in the petition. On appeal, we hold that if a petition for a writ of error coram nobis is not timely filed and seeks tolling of the statute of limitations, it must be based on new evidence, discovered after expiration of the limitations period, that clearly and convincingly shows that the petitioner is actually innocent of the underlying crime, i.e., that the petitioner did not commit the crime. To obtain tolling of the coram nobis statute of limitations, the prisoner must file the petition no more than one year after he discovers the new evidence of actual innocence. From our review of the record, we agree with the analysis and conclusion of the coram nobis court and find no error. Accordingly, we reverse the decision of the Court of Criminal Appeals and affirm the decision of the coram nobis court dismissing the petition as untimely.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed.**

HOLLY KIRBY, C.J., delivered the opinion of the Court, in which ROGER A. PAGE, and SARAH K. CAMPBELL, JJ., joined. JEFFREY S. BIVINS, J. filed a separate opinion concurring in the judgment, in which SHARON G. LEE, J., joined.

Jonathan Skrmetti, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Richard D. Douglas, Senior Assistant Attorney General, for the appellant, State of Tennessee.

Jessica M. Van Dyke and Scott D. Gallisdorfer, Nashville, Tennessee, for the appellee, Thomas Edward Clardy.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

On July 29, 2005, Kirk Clouatre, his wife Melissa Clouatre, and his twin brother Kent Clouatre were at a car body shop where the Clouatre brothers worked.[1] *State v. Clardy*, No. M2007-02729-CCA-R3-CD, 2009 WL 230245, at *1 (Tenn. Crim. App. Feb. 2, 2009) *perm. app. denied*, (Tenn. June 15, 2009). Kirk and Melissa's two children were in their vehicle, along with another child. *Id.* at *2. A car pulled up to the body shop, and a group of men exited. *Id.* at *1. After a short conversation with Kirk, the men began firing guns. *Id.* They killed Kirk and wounded Melissa and Kent. *Id.* None of the children were shot. *Id.* at *1, *3. The men fled the scene in their car. *Id.* at *1.

In the ensuing investigation, officers collected crime scene evidence. *Id.* at *7. The evidence collected included firearms cartridge casings in three different ballistic calibers: .40 Smith and Wesson, 9mm, and .380 auto. Investigators did not recover any of the weapons believed to be used by the assailants at the crime scene. *Id.* at *8.

The identity of the perpetrators was a main issue during the investigation. *Clardy v. State*, No. M2017-01193-CCA-R3-PC, 2018 WL 5046032, at *1 (Tenn. Crim. App. Oct. 17, 2018) *perm. app. denied*, (Tenn. Apr. 12, 2019). Kent was the only witness who said he had seen any of them before the crime. *Clardy*, 2009 WL 230245, at *5 (direct appeal).

---

[1] Because the adult victims share the same surname, for clarity, we refer to them by their first names. In doing so, we intend no disrespect.

Kent said a man he knew only as "T" fired the shots that killed Kirk, and also wounded Melissa, using a "[s]emiautomatic .40 caliber" handgun. *Id.* In a pre-trial photographic lineup, Kent identified the petitioner, Thomas Edward Clardy, as "T." *Id.*

Kent said that a second perpetrator shot him, using an older model ".38 caliber with a hammer on it." *Id.* Kent described the second perpetrator as "a little bit heavy set . . . little shorter" and stated that he "had gold . . . in his teeth, diamonds were set sideways, when he gritted at [Kent]." *Id.*

Kent described a third perpetrator as a taller, thin man who carried a semiautomatic gun. *Clardy*, 2018 WL 5046032, at *1 (post-conviction). He could not identify the caliber of the weapon. *Id*. Melissa described the third perpetrator as wearing a blue shirt and did not see him with a gun. *Clardy*, 2009 WL 230245, at *3 (direct appeal). Kent testified this third man never fired his gun. *Id.* at *5.

In 2006, Clardy was indicted on six counts. Count I alleged first degree murder of Kirk, Count II alleged attempted first-degree murder of Kent, and Count III alleged attempted first-degree murder of Melissa. Counts IV through VI alleged that Clardy recklessly engaged in conduct which placed or might have placed each of the three children in danger of death or serious bodily injury. The only person charged was Clardy.

At Clardy's trial, the identity of the shooters was a main issue. *Clardy*, 2018 WL 5046032, at *1 (post-conviction). Witnesses were questioned about statements they made to police during the investigation. *Clardy*, 2009 WL 230245, at *3–10 (direct appeal).

On July 9, 2007, the jury convicted Clardy on all counts. He received an effective life sentence.

On direct appeal, Clardy challenged the sufficiency of the evidence as to his identity as one of the shooters. *Id.* at *10. The Court of Criminal Appeals affirmed the trial court's judgment. *Id.* at *14. This Court denied permission to appeal. *Id.* at *1.

In 2009, Clardy filed a *pro se* petition for post-conviction relief. *Clardy*, 2018 WL 5046032, at *2 (post-conviction). He was then represented by a series of attorneys. *Id.*

In the post-conviction proceedings, it was undisputed that, before trial, Clardy's trial counsel did not ask for ballistics testing of the cartridge casings found at the crime scene. *Id.* at *4. Clardy argued that trial counsel was ineffective for failing to obtain independent ballistics testing of the cartridge casings so as to present evidence of alternate suspects. *Id.* at *3.

In 2015, the post-conviction court entered an agreed order authorizing a forensic firearms examiner to re-examine cartridge casings recovered from the July 29, 2005 crime scene. *Id.* Under this order, a forensic firearms examiner, Bridget Chambers, issued a report detailing the results of her analysis. *Id.* In the report, Ms. Chambers matched the two .40 Smith and Wesson caliber cartridge casings to a Glock 23 handgun used in a July 5, 2006 crime by someone named Dantwan Collier. *Id.* Reportedly, Mr. Collier had "gold teeth." *Id.* Ms. Chambers also matched the two 9mm cartridge casings recovered from the crime scene to other 9mm cartridge casings found at the scene of a January 5, 2006 homicide that involved Dantwan Collier's cousin, Thomas Collier. *Id.* Finally, the report matched the .380 auto cartridge case found at the scene to a Hi-Point pistol used in a 2006 crime. *Id.*

After obtaining the forensic firearms examiner's report, Clardy claimed it established his innocence "because he had an alibi for the time of the crime and there was a viable alternate suspect, Dantwan Collier." *Id.* at *7. He contended it showed that his trial counsel was ineffective for failing to ask for independent ballistics testing of the cartridge casings. *Id.* at *3.

In September 2016, the post-conviction trial court held an evidentiary hearing on Clardy's post-conviction petition. *Id.* at *2. At the hearing, trial counsel explained that the decision not to ask for ballistics testing was strategic: "I didn't want to give the State an opportunity to find something they may have missed if [Petitioner's] DNA was there" because no other physical evidence tied Clardy to the crime. *Id.* at *4. Trial counsel conceded that, had it been known before trial that the ballistics from the cartridge casings matched weapons used in two other crimes, she "probably" would have used that information in Clardy's defense. *Id.*

At the end of the hearing, the post-conviction court denied the petition. *Id*. at *2. It found that the exculpatory value of the ballistics testing, the alibi, and alternate suspects was insufficient to warrant post-conviction relief. *Id*. at *7. The post-conviction court was not swayed by a ballistics match to a firearm used in a crime eleven months later. *Id*. at *3. The court stated "[i]t is far from unusual for handguns to pass from person to person with no record of sale." The court further noted "[t]here were two other individuals not apprehended in this case. Further, a handgun may be handed off or sold. The use of a handgun in a murder might only incentivize such a sale."

The post-conviction court found Clardy had not established by clear and convincing evidence that newly discovered evidence established either that he was innocent or that his trial attorney was ineffective for not presenting this evidence at trial. Clardy appealed.

- 4 -

On appeal from the post-conviction court, the Court of Criminal Appeals agreed and affirmed:

> The ballistic testing revealed that a .40 caliber cartridge casing found at the crime scene matched a weapon used in a subsequent shooting by Dantwan Collier and the two 9mm cartridge casings matched a weapon used in a subsequent shooting by Thomas Collier. This evidence, while certainly exculpatory, does not prove [Clardy's] innocence by clear and convincing evidence. There were three individuals who participated in the shooting in this case. This newly discovered evidence suggests that Dantwan Collier and/or Thomas Collier may have been involved. However, it does not mean that [Clardy] was not one of the three men. Furthermore, it is possible that [Clardy] possessed one of the firearms before Dantwan or Thomas Collier. So, even though the evidence is exculpatory, it does not prove [Clardy's] innocence by clear and convincing evidence.

*Clardy*, 2018 WL 5046032, at *7.

Later, on December 10, 2019, Clardy obtained an affidavit from Dantwan Collier. It stated:

1. My name is Dantwan Collier. I am over twenty-one years of age, and I am competent to make this Affidavit. I have personal knowledge of the facts set forth herein, and if called upon as a witness, I could testify to them competently under oath.

2. I do not know Thomas Clardy. I do not recall ever meeting anyone with that name.

3. I have never received any property of any kind from Thomas Clardy.

Almost a year later, on December 8, 2020, Clardy filed this petition for writ of error coram nobis, relying on the affidavit from Dantwan Collier. Clardy's petition acknowledged the one-year statute of limitations for filing a writ of error coram nobis had run ten years earlier, in June 2010. He argued he was entitled to tolling of the statute of limitations because his attorney supposedly did not learn until 2016 that his trial counsel never asked for ballistics testing of the cartridge casings, and once he obtained the ballistics testing from the forensic firearms examiner, he continued diligently investigating until he

finally obtained the affidavit from Dantwan Collier in December 2019 "after the exhaustion of all other remedies."

Five days after Clardy filed his coram nobis petition, the State filed a short response. In it, the State said: "(1) due process equitable tolling IS applicable to the new evidence in this case as a 'later-arising claim,' and (2) [Clardy] has met the requirement for equitable tolling by demonstrating that he was without fault in failing to present the new evidence at an earlier time." (emphasis in original) The State agreed that his petition was not time-barred and asked the coram nobis court to consider it on its merits. The State acknowledged Clardy was asserting a claim of actual innocence and asked for more time to investigate his claims before responding on the merits of Clardy's petition.

Notwithstanding the State's concession, the error coram nobis court held a hearing on whether it should permit tolling of the statute of limitations, since Clardy's petition was filed over twelve years after the one-year limitations period lapsed.

At the hearing, the parties filed a "Joint Stipulation of Facts." The Stipulation recounted the allegations in the error coram nobis petition, as well as the following:

43.     The earlier Court of Criminal Appeals' opinion denying Petitioner's petition for post-conviction relief had held that Petitioner had not adequately shown his innocence in part because the new ballistics evidence, while exculpatory, did not rule out the possibility that Petitioner and Dantwan Collier were accomplices or that Petitioner possessed one of the guns before Dantwan Collier.

44.     Based on the Dantwan Collier affidavit, which addresses these two issues, Petitioner filed a petition for writ of error coram nobis on December 8, 2020. Petitioner filed his petition for writ of error coram nobis less than one year after obtaining the affidavit.

45.     The State does not dispute that the petition was timely filed.

Here, the coram nobis court questioned the State on whether the evidence showed Clardy was actually innocent. The State declined to take any position on that question; it instead said "it needed additional time for investigation." The trial court noted that, in 2016, the report of Clardy's forensic firearms examiner had pointed to Dantwan and Thomas Collier as alternate suspects. It also observed that one of the grounds litigated in the 2016 post-conviction proceedings was Clardy's assertion that trial counsel should have

had the cartridge casings examined and presented the results in his defense at trial. Clardy's counsel agreed but indicated the Dantwan Collier affidavit showed his innocence:

> Correct, Your Honor. But the Court said [in denying the post-conviction petition] none of that matters because they could know each other, they could be friends. [Dantwan Collier] could have gotten the gun from Mr. Clardy. . . . So yes, we did argue that [at post-conviction]. But the idea that then we could never present additional proof to rebut the Court's ruling on that I think is why we have coram nobis, so we can present . . . evidence of actual innocence.

After the hearing, the coram nobis court issued a written order denying the petition based on the statute of limitations. It acknowledged that, in support of his claim of actual innocence at his post-conviction hearing, Clardy had presented evidence that the cartridge casing examination results led to Dantwan Collier as an alternate suspect, "[b]ut the trial court and Court of Criminal Appeals rejected that claim." The coram nobis court disagreed with Clardy's contention that the Dantwan Collier affidavit established Clardy's innocence. "Even taking the new affidavit at face value," the coram nobis court said, the affidavit did not "rule out or even seriously undermine" Clardy's involvement in the underlying crime. *Clardy v. State*, No. 2006-B-1065, at 5 (Davidson Cnty. Crim. Ct. Apr. 27, 2021). It remarked that Clardy's counsel acknowledged in the hearing that guns "do get passed around on the street." The coram nobis court noted that the ballistics evidence was considered in Clardy's post-conviction proceedings, and held that the Collier affidavit "does not amount to 'new evidence of actual innocence' discovered after the expiration of the limitations period," citing *Nunley v. State*, 552 S.W.3d 800, 828 (Tenn. 2018). It concluded that Clardy had not shown equitable tolling of the statute of limitations was appropriate, so it dismissed the petition as untimely. *Clardy*, No. 2006-B-1065, at 5.

Clardy appealed to the Court of Criminal Appeals. He argued that the coram nobis court had used the wrong standard in dismissing his petition. *Clardy*, 2022 WL 2679026, at *5. The Court of Criminal Appeals agreed with Clardy and reversed the coram nobis court. *Id*. at *7. It cited the following standard:

> To be entitled to equitable tolling, a prisoner must demonstrate with particularity in the petition: (1) that the ground or grounds upon which the prisoner is seeking relief are "later arising" grounds, that is grounds that arose after the point in time when the applicable statute of limitations normally would have started to run; [and] (2) that, based on the facts of the case, the

strict application of the statute of limitations would effectively deny the prisoner a reasonable opportunity to present his or her claims.

*Id.* at \*6 (citing *Nunley*, 552 S.W.3d at 829). Applying this standard, it first found that Clardy's grounds were "later arising." *Id.* at \*7. It found the second prong was satisfied as well:

> We further conclude that strict application of the statute of limitations would effectively deny the Petitioner a reasonable opportunity to present his claims. As the State claimed before the *coram nobis* court below, an adequate investigation into whether the Colliers were present at the Clouatre shooting and whether the Petitioner was with them is important to serve the ends of justice. The State's interest in preventing stale litigation is outweighed by the Petitioner's interest in presenting his meaningful claim. Accordingly, we conclude that the Petitioner is entitled to an equitable tolling of the statute of limitations.

*Id.* The intermediate appellate court did not discuss whether the evidence offered by Clardy was newly discovered evidence of actual innocence.

We granted the State's request for permission to appeal. On appeal, the State raises the issues of whether an error coram nobis petitioner must present newly discovered evidence of actual innocence in order for the coram nobis court to toll the statute of limitations and whether the evidence offered by Clardy in this case meets the standard for actual innocence.

## ANALYSIS

In this appeal, the issues involve only the standard to toll the statute of limitations for petitions for error coram nobis, and not the standard for a determination on the merits of coram nobis petitions. The analysis for relief on the merits of the petition is separate and distinct from the analysis for whether the statute of limitations may be tolled.

For context, we provide a brief background on error coram nobis generally, and then address the tolling exception to the coram nobis statute of limitations.

## Error Coram Nobis

As discussed by this Court in *Nunley v. State*, the writ of error coram nobis has ancient roots in the common law of England. 552 S.W.3d at 810 (citations omitted). Because the common law in England recognized neither a right to move for a new trial nor a right to appeal," the writ was developed to provide limited relief from judicial errors in civil cases. *Id.* (citations omitted).

In Tennessee, the writ was recognized at common law but was not available in criminal cases. *Id.* (citations omitted). Eventually, Tennessee's General Assembly enacted a statute permitting writs of error coram nobis to be used to challenge criminal convictions based on newly discovered evidence. *Id.* at 811 (citing *Wlodarz v. State*, 361 S.W.3d 490, 508 (Tenn. 2012) (Koch, J., concurring in result only) (citing 1978 act)). In its current configuration, the statute provides:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b). The relief sought by a writ of error coram nobis is the setting aside of the conviction and the granting of a new trial. *Payne v. State*, 493 S.W.3d 478, 485 (Tenn. 2016) (citation omitted). The decision to grant or deny the petition is within the trial court's discretion. *Id.* at 484.

Coram nobis relief in criminal cases in Tennessee is considered extraordinary relief and, as can be seen from the above statute, it comes with stringent statutory requirements. *Id.* (quoting *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (describing writ as an "extraordinary procedural remedy")). The relief is "confined to error dehors the record"[2] and "matters that were not and could not have been litigated" in the trial, the appeal, or any other type of post-conviction proceeding. Tenn. Code Ann. § 40-26-105(b). The writ may lie for "subsequently or newly discovered evidence" that relates to matters litigated at the trial only if (1) the defendant shows he was "without fault in failing to present" the evidence

---

[2] "Dehors" means "outside of" or "not within the scope of." *Dehors*, *Shorter Oxford English Dictionary* (6th ed. 2007).

"at the proper time" and (2) the trial judge finds that presenting the evidence at trial "may have resulted in a different judgment." *Id.* This is perhaps why the writ of error coram nobis is "known more for its denial than its approval." *Mixon*, 983 S.W.2d at 666 (citation omitted).

Writs of error coram nobis are no longer governed by the common law; "[r]ather, in Tennessee, the availability of error coram nobis relief is governed solely by statute." *Frazier v. State*, 495 S.W.3d 246, 248 (Tenn. 2016). *See also Payne*, 493 S.W.3d at 487. "[C]onsequently, relief must be determined by reference to the statutes." *Nunley*, 552 S.W.3d at 819 (citing *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 597 (Tenn. 1999)).

Error coram nobis is no longer available as an avenue for relief in civil cases. *Id.* at 811 (citing State v. *Mixon*, 983 S.W.2d 661, 668 (Tenn. 1999)). However, "[o]wing to the civil heritage of the writ of error coram nobis in Tennessee, the general statutes governing procedures for the writ remain codified in a section of the Code pertaining to civil actions." *Id.* (statutory citations omitted). These "include the one-year statute of limitations applicable to petitions for coram nobis relief." *Id.* (citing Tenn. Code Ann. § 27-7-103).

In *Nunley*, this Court clarified that, in Tennessee, petitions for a writ of error coram nobis may be dismissed on the face of the petition, without discovery, an evidentiary hearing, or notification to the opposing party. *Id.* at 825–26. In keeping with the extraordinary nature of the writ, the petition must be pled with specificity.[3] *Id.* at 829 (citations omitted). Trial courts need conduct evidentiary hearings only when they are

_____

[3] Justice Koch's concurring opinion in *Harris v. State* outlined what must be in the petition to meet the required level of specificity:

> The motion or petition must be in writing and (1) must describe with particularity the nature and substance of the newly discovered evidence and (2) must demonstrate that this evidence qualifies as "newly discovered evidence." In order to be considered "newly discovered evidence," the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible. In addition to describing the form and substance of the evidence and demonstrating that it qualifies as "newly discovered evidence," the prisoner must also demonstrate with particularity (3) why the newly discovered evidence could not have been discovered in a more timely manner with the exercise of reasonable diligence; and (4) how the newly discovered evidence, had it been admitted at trial, may have resulted in a different judgment.

301 S.W.3d at 152 (footnotes and citations omitted) (Koch, J., concurring in part) (quoted with approval in *Payne*, 493 S.W.3d at 485); *see also Nunley*, 552 S.W.3d at 823.

essential. *Id.* at 826 (citation omitted). This is consistent with the history of coram nobis and aligns with the abuse-of-discretion standard of appellate review of the trial judge's decision on whether to grant coram nobis relief. *Id.* (citation omitted).

Timeliness under the statute of limitations in Tennessee Code Annotated section 27-7-103 is not an affirmative defense; rather, it is one of the essential elements of a coram nobis claim. *Id*. at 827–28. Thus, a coram nobis petition must show on its face that it is timely filed. *Id.* at 828.

## Tolling the Statute of Limitations

Despite the long history in coram nobis cases of strictly observing the statute of limitations, in *Workman v. State*, this Court recognized a limited circumstance in which the statute of limitations may be tolled. 41 S.W.3d 100, 101 (Tenn. 2001); *see also Nunley*, 552 S.W.3d at 828–29.[4] In *Workman*, petitioner Workman had been convicted of capital murder. 41 S.W.3d at 101. Two days before he was scheduled to be executed, Workman filed an action that included a petition for a writ of error coram nobis based on claims that new evidence, unavailable at trial and never evaluated in the course of appeal and post-conviction proceedings, showed he was innocent of capital murder. *Id*. at 101 (majority opinion) and 104 (Anderson, C.J., and Barker, J., dissenting). Workman's petition was filed well after expiration of the one-year limitations period for coram nobis relief, and the trial court denied the petition on that basis. *Id.* at 101. This Court considered whether due process considerations required tolling the statute of limitations. *Id.*

Weighing the governmental interests against Workman's private interests, the majority of the Court held that "Workman's interest in obtaining a hearing to present newly discovered evidence that may establish actual innocence of a capital offense far outweigh[ed] any governmental interest in preventing the litigation of stale claims." *Id.* at 103. The evidence at issue, it said, was obtained from the medical examiner's office long after conclusion of the post-conviction proceedings, and the delay in obtaining the evidence was not attributable to the fault of either Workman or his attorneys.[5] *Id.* The evidence raised "serious questions" about whether Workman fired the shot that killed the victim,

---

[4] Whether due process requires tolling the statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness. *Nunley*, 552 S.W.3d at 830 (citations omitted).

[5] The *Workman* majority noted that Workman's trial counsel had "filed a subpoena requesting an x-ray of this type, but it was not provided." 41 S.W.3d at 103.

and if the evidence showed he did not fire that shot, the majority said, he was "not guilty of the crime for which he [was] scheduled to be put to death."[6] *Id.*

The majority in *Workman* acknowledged that the petition for writ of error coram nobis was filed about thirteen months after discovery of the new evidence. *Id*. That time period, it held, did not exceed the opportunity afforded by due process, given "the magnitude and gravity of the penalty of death."[7] *Id.* (quoting *In re Clark*, 855 P.2d 729, 760 (1993)). Emphasizing Workman's interest in "having a court evaluate newly discovered evidence that may show actual innocence of the capital offense," the majority reversed the trial court's dismissal of the petition and remanded the case for a hearing. *Id.* at 103–04.

Since *Workman*, opinions by this Court have briefly discussed tolling of the statute of limitations in a few error coram nobis cases.[8] For example, in *Nunley*, this Court held that a petition for a writ of error coram nobis must show on its face either that it was timely filed within the one-year statute of limitations or specific facts establishing the petitioner is entitled to tolling of the statute of limitations, and if it does not do so, trial courts may summarily dismiss without an evidentiary hearing. 552 S.W.3d at 829; *see also Wilson v. State*, 367 S.W.3d 229, 235–36 (Tenn. 2012) (holding that evidence supporting request to toll statute of limitations for coram nobis petition must be admissible).[9]

We have not, however, elaborated on the standard for proof in coram nobis cases to support a decision to toll the statute of limitations. This case allows us to do so.

---

[6] The dissent in *Workman* argued that the evidence did not "conclusively establish that Workman did not fire the fatal shot," but instead "merely propound[ed] a different theory than that presented at the original trial." *Id.* at 104 (Anderson, C.J., and Barker, J., dissenting).

[7] The dissent in *Workman* contended that, even assuming "that the statute of limitations was tolled during the time Workman was unaware of the evidence," his petition was filed "more than one year, the time provided by the statute of limitations," after he became aware of the evidence, so the dissenting justices would have denied the motion for a stay of execution for that reason as well. *Id.* at 105–06 (Anderson, C.J., and Barker, J., dissenting).

[8] Cases have at times referred to tolling the statute of limitations as both "equitable tolling" and "due process tolling." *See, e.g.*, *Nunley*, 552 S.W.3d at 828–29 (referring to "equitable tolling" in coram nobis proceeding). *Cf. Smith v. State*, 357 S.W.3d 322, 355 (Tenn. 2011) (referring to equitable tolling in post-conviction); *Whitehead v. State*, 402 S.W.3d 615, 626 (Tenn. 2013) (referring to due process tolling in post-conviction).

[9] *Nunley* overruled *Wilson* to the extent that *Wilson* stated that, in error coram nobis cases, the State was required to raise the statute of limitations in Section 27-7-103 as an affirmative defense. *Nunley*, 552 S.W.3d at 828.

In its request for permission to appeal, the State argues that, to obtain tolling of the statute of limitations, an error coram nobis petitioner must present evidence of actual innocence of the crime for which he was convicted, and it contends that the Court of Criminal Appeals remanded for a hearing on the merits without finding that Clardy's evidence would show actual innocence. In response, Clardy acknowledges that, to toll the statute of limitations, a coram nobis petition must include a claim that the petitioner has newly-discovered evidence showing actual innocence, but he defends the analysis of the Court of Criminal Appeals as correct.

We agree that, for a coram nobis petitioner to obtain tolling of the statute of limitations, the petition must present newly discovered evidence of actual innocence of the underlying crime of which he was convicted. As can be seen from the Court's opinion in *Workman*, the majority's reasoning for permitting tolling of the statute of limitations was based on what it described as "serious questions" about actual innocence raised by the newly discovered evidence, in the face of an impending execution. 41 S.W.3d at 103. Indeed, a primary point of disagreement by the dissenting justices was their view that the evidence offered by Workman did not show he was innocent. *Id.* at 104–05 (Anderson, C.J., and Barker, J., dissenting). Drawing on our prior caselaw, *Nunley* included evidence of actual innocence in the description of the standard for tolling the statute of limitations in coram nobis cases: "To accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error coram nobis seeks relief *based upon new evidence of actual innocence* discovered after expiration of the limitations period." *Nunley*, 552 S.W.3d at 828–29 (emphasis added) (first citing *Wilson*, 367 S.W.3d at 234; then citing *Harris v. State*, 301 S.W.3d 141, 145 (Tenn. 2010) *[hereinafter Harris II]*; and then citing *Workman*, 41 S.W.3d at 101)).

Notably, for a petition for error coram nobis relief filed within the statute of limitations, the statute does not mandate that the newly discovered evidence show actual innocence. *See* Tenn. Code Ann. § 40-26-105(b). For a timely petition, if the newly discovered evidence relates to matters that were litigated at trial, the trial judge may grant coram nobis relief if she "determines that such evidence may have resulted in a different judgment, had it been presented at the trial." *Id.* In contrast, if a coram nobis petition "does not show on its face that it is filed within the one-year statute of limitations, the petition must set forth with particularity facts demonstrating that the prisoner is entitled to equitable tolling of the statute of limitations." *Nunley*, 552 S.W.3d at 829. Those facts must include new "evidence of actual innocence" discovered after the limitations period elapsed. *Id.* at 828–29.

Here, the coram nobis court concluded that Clardy's "newly discovered" evidence did not show he was actually innocent of the crime of which he was convicted. On appeal, the Court of Criminal Appeals correctly noted that a request to toll the statute of limitations for a petition for error coram nobis relief must be "based upon new evidence of actual innocence discovered after the expiration of the limitations period." *Clardy*, 2022 WL 2679026, at *6. It described the ballistics evidence and the affidavit from Dantwan Collier asserting he did not know Clardy and had received no property from him. *Id.* at *7. It did not, however, discuss whether Clardy's "new" evidence would, if deemed credible, show actual innocence. Instead, it said that both the ballistics evidence and the Collier affidavit were "later arising" in the sense that they were discovered after the limitations period expired, and that "an adequate investigation into whether the Colliers were present at the Clouatre shooting and whether [Clardy] was with them is important to serve the ends of justice." *Id.* From this, the appellate court held that "[t]he State's interest in preventing stale litigation is outweighed by [Clardy's] interest in presenting his meaningful claim." *Id.*

Respectfully, if this were the standard, the tolling exception would swallow the statute of limitations enacted by our legislature for error coram nobis petitions. The tolling exception adopted in *Workman* is strictly limited to situations in which the petitioner brings to the coram nobis court new evidence that would, if considered credible, show he is actually innocent of the underlying crime. We agree with the State that the intermediate appellate court in this case did not adequately address the pivotal question of whether Clardy's "new" evidence showed actual innocence.[10]

---

[10] In reviewing summary dismissals of coram nobis petitions, other decisions by the Court of Criminal Appeals have considered whether the evidence offered by the petitioner showed actual innocence. *See, e.g.*, *Hodge v. State*, No. E2022-00911-CCA-R3-ECN, 2023 WL 5164587, at *7 (Tenn. Crim. App. Aug. 11, 2023) ("Ms. Hamilton's 1999 theft conviction may relate to Ms. Hamilton's credibility, but it does not prove that Petitioner is actually innocent of the murder of Mr. Boling and is not sufficient to toll the statute of limitations."); *Douglas v. State*, No. W2021-01401-CCA-R3-ECN, 2022 WL 1572813, at *4 (Tenn. Crim. App. May 18, 2022) ("Even if a sworn affidavit had been presented with the petition, Ms. Nichols's statement is not evidence of actual innocence and, therefore, does not warrant due process tolling. *See Nunley*, 552 S.W.3d at 828-29."); *Haley v. State*, No. W2021-00777-CCA-R3-ECN, 2022 WL 796364, at *4 (Tenn. Crim. App. Mar. 16, 2022) ("[W]e conclude the coram nobis court did not err in summarily dismissing the petitioner's petition for writ of error coram nobis. . . . He filed the instant petition on June 1, 2021, almost twelve years after his convictions became final. Clearly, the petitioner does not make a claim of actual innocence."); *Moffitt v. State*, No. W2020-00594-CCA-R3-ECN, 2020 WL 7042769, at *4 (Tenn. Crim. App. Nov. 30, 2020) ("We also conclude that the Petitioner has failed to establish equitable tolling of the statute of limitations because he did not present 'new evidence of actual innocence discovered after the expiration of the limitations period.' *Nunley*, 552 S.W.3d at 828–29.").

We acknowledge the *Workman* opinion itself was not a model of clarity on the standard for evidence of actual innocence to toll the statute of limitations in coram nobis cases. Indeed, the majority and the dissent in *Workman* disagreed vigorously about whether Workman's new evidence sufficiently showed actual innocence. *Workman*, 41 S.W.3d at 104 (Anderson, C.J., and Barker, J., dissenting). Subsequent cases have not provided further explanation. *See Nunley*, 552 S.W.3d at 828–29 (first citing *Wilson*, 367 S.W.3d at 234; then citing *Harris II*, 301 S.W.3d at 145; and then citing *Workman*, 41 S.W.3d at 101)). We will endeavor to clarify.

In defining "actual innocence," the coram nobis court below relied on the meaning used by this Court in post-conviction proceedings, that "'actually innocent of the offense' means nothing other than that the person did not commit the crime." *Keen v. State*, 398 S.W.3d 594, 612 (Tenn. 2012). Clardy disagrees with the coram nobis court's analysis. He acknowledges that tolling of the statute of limitations "is available only to [coram nobis] petitioners whose claims are *based* on evidence of actual innocence." Still, he argues that coram nobis courts should not evaluate the evidence on actual innocence when deciding whether to toll the statute of limitations, noting that the *Workman* majority said only that Workman's new evidence "raised serious questions" about whether he committed the underlying crime. 41 S.W.3d at 103. At this first stage, Clardy contends, the coram nobis court should consider only whether the petitioner should be granted tolling in order to have the *opportunity* to present his evidence of actual innocence. Consequently, in the initial decision on tolling, Clardy says the coram nobis court should only weigh the government's interest against the private party's interest and determine whether the evidence may have resulted in a different judgment had it been presented at trial, as set out in the coram nobis statute, Tennessee Code Annotated section 40-26-105(b).

We agree with Clardy that, at this initial stage of determining whether to permit tolling of the statute of limitations, the coram nobis court need not make a final determination of whether the "new" evidence offered by the petitioner is credible. However, we must respectfully disagree with the rest of Clardy's argument.[11] In the tolling analysis, it is not enough for the petitioner to simply *assert* that the new evidence shows actual innocence. The standard suggested by Clardy is essentially no standard at all; it

---

[11] Clardy suggests that using any standard for tolling analysis other than whether the new evidence "*may* have resulted in a different judgment, had it been presented at trial", i.e., the language in Tennessee Code Annotated § 40-26-105(b), would amount to "substitut[ing] a judge-made . . . standard of proof for the standard the Tennessee legislature set forth in the plain language of the coram nobis statute." Respectfully, this argument ignores the fact that our job in this appeal is to explain the standard for a "judge-made" *exception* to Tennessee Code Annotated section 27-7-103, the one-year statute of limitations for coram nobis petitions.

- 15 -

would result in bypassing the statute of limitations altogether and going straight to a merits determination on any coram nobis petition that claimed to offer supposedly new evidence, even if it had only a flimsy bearing on actual innocence.[12]

From the other side, the State suggests we adopt the same standard of proof that federal courts use when tolling the statute of limitations for federal habeas petitions. Under this standard, a coram nobis petitioner would "only obtain tolling of the statute of limitations if he presents new evidence that makes it more likely than not that no reasonable juror would have voted to convict the petitioner at trial." In support, the State notes that habeas relief is ordinarily available only after a petitioner has exhausted his state court claims. However, the United States Supreme Court has recognized a "miscarriage-of-justice exception" to the exhaustion requirement and to the federal habeas statute of limitations based on a credible showing of actual innocence, citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995) and *McQuiggin v. Perkins*, 569 U.S. 383, 392–93 (2013). To qualify for the miscarriage-of-justice exception, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327. The Court in *McQuiggin* explained that the "gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" 569 U.S. at 401. The State urges this Court to adopt this same standard for Tennessee claims of actual innocence filed beyond the coram nobis statute of limitations.

Neither Clardy nor the State suggest a meaning for "actual innocence" different from that used by the coram nobis court in this case. Here, the coram nobis court below relied on a definition provided in *Keen v. State*, in which a petitioner convicted of first-degree murder sought to re-open post-conviction proceedings to present "new scientific evidence" of intellectual disability to show he was "actually innocent" of the offense. 398 S.W.3d 594, 598 (Tenn. 2012); *see* Tenn. Code Ann. § 40-30-117(a)(2) (addressing motions to re-open post-conviction proceedings based on "new scientific evidence establishing that the petitioner is actually innocent of the offense"). The petitioner in *Keen* argued that new evidence on his intellectual disability showed that he was "actually innocent of the offense" under the language in section 40-30-117(a)(2). 398 S.W.3d at 598. The *Keen* Court held that the statutory phrase "actually innocent of the offense" meant "nothing other than that the person did not commit the crime." *Id.* at 612. The petitioner, the Court noted, was not alleging factual innocence of the offense, and it concluded that intellectual disability did "not equate to actual innocence." *Id.* at 612–13.

_____

[12] Coram nobis petitioners are "not entitled to equitable tolling to pursue a patently non-meritorious ground for relief." *Nunley*, 552 S.W.3d at 831 (quoting *Harris II*, 301 S.W.3d at 153 (Koch, J., concurring in part)).

- 16 -

Unlike *Keen*, we are not interpreting a statute; we are instead addressing a judge-made exception to the statute of limitations in error coram nobis cases. Still, the meaning *Keen* ascribed to "actually innocent of the offense" in section 40-30-117(a)(2) is straightforward and works equally well in this context. So we agree with the definition of "actual innocence" used by the coram nobis court below.

*Workman* likewise did not discuss the standard of proof for newly-discovered evidence of actual innocence for coram nobis cases in which tolling is sought. Explanation of the standard is needed in order for coram nobis courts to properly evaluate whether to grant tolling for coram nobis petitions in which prisoners claim such evidence.

To determine the appropriate standard for proof of actual innocence, we look at *Workman*'s balancing process. Under the tolling analysis adopted in *Workman*, the coram nobis court must weigh the State's interest against the petitioner's private interests. 41 S.W.3d at 103. This balance changes at different stages of criminal proceedings. "In state criminal proceedings[,] the trial is the paramount event for determining the guilt or innocence of the defendant." *Herrera v. Collins*, 506 U.S. 390, 416 (1993). At the time of trial,

> the accused is in the court-room, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens.

*Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Before the trial and at trial, the accused's liberty interest is weighty indeed; he is entitled to a presumption of innocence and has many constitutional protections to ensure "against the risk of convicting an innocent person." *Herrera*, 506 U.S. at 398–99 (citing examples of constitutional protections for accused).

Once the jury returns a guilty verdict and the verdict is approved by the trial court, this has the effect of crediting the testimony of the witnesses for the State, resolving all conflicts in favor of the State, and replacing the presumption of innocence the defendant had at trial with a presumption of guilt. *State v. Clayton*, 535 S.W.3d 829, 844 (Tenn. 2017) (citations omitted). The convicted defendant, however, still has many avenues for relief, including a motion for new trial, direct appeal, statutory post-conviction proceedings, and a coram nobis petition timely filed within the statute of limitations.

In weighing the petitioner's liberty interest against the State's interest in preventing the litigation of "stale and fraudulent claims," *Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995),[13] as time goes on and the convicted defendant exhausts the many remedies available to him, the State's interest in finality of the conviction becomes weightier. "The administration of justice and the integrity of our court system demand, in addition to fair treatment under the law, a certain degree of finality to criminal judgments." *Harrison v. State*, 394 S.W.2d 713, 717–18 (Tenn. 1965). Moreover, since 1998, Tennessee's Constitution gives victims of crime "[t]he right to . . . a prompt and final conclusion of the case after the conviction or sentence." Tenn. Const. art. I, § 35(6); *State v. Al Mutory*, 581 S.W.3d 741, 749 (Tenn. 2019) (quoting Tenn. Const. art. I, § 35). Under the implementing statute to this constitutional provision, "[a]ll parties affected by a criminal offense, including the victim, survivors of the victim and witnesses to the offense, shall be able to expect that the operation of the criminal justice system will not be unnecessarily delayed and that they will be able to return to normal lives as soon as possible." Tenn. Code Ann. § 40-38-105(a).

For this reason, the tolling exception to the statute of limitations for writs of error coram nobis should be no broader than is needed to accommodate the requirements of due process. After all, the relief sought by a writ of error coram nobis is the setting aside of the conviction and the granting of a new trial, *Payne*, 493 S.W.3d at 485, and for a petition that seeks tolling of the statute of limitations, this may be many years down the road. We know that "the passage of time only diminishes the reliability of criminal adjudications." *Herrera*, 506 U.S. at 403. Because of the "very disruptive effect" that litigating claims of actual innocence would have on the need for finality in criminal cases, and the "enormous burden that having to retry cases based on often stale evidence" would place on the State, *id.* at 417, the threshold for tolling the coram nobis statute of limitations should be high.

Consequently, we reject the standard urged by the State in this appeal. Instead, balancing the interests of the State and victims against those of the error coram nobis petitioner, we hold that the coram nobis statute of limitations may be tolled only if the petitioner produces newly discovered evidence that would, if true, establish clearly and convincingly that the petitioner is actually innocent of the underlying crime of which he was convicted. *Cf.* Tenn. Code Ann. § 40-30-117(a) (requiring clear and convincing evidence to reopen the first post-conviction petition based on new scientific evidence showing actual innocence); Tenn. Code Ann. § 40-30-110(f) (clear and convincing evidence required to obtain post-conviction relief).[14]

---

[13] *Sands* was overruled on other grounds by *Nunley*, 552 S.W.3d at 826.

[14] As observed by the concurring opinion in this case, it would be possible to decide this case by determining only whether the proof offered by Mr. Clardy showed "actual innocence" by the definition of

This Court has explained the clear and convincing standard:

> To meet the clear and convincing standard, the trial court must determine that the evidence offered . . . is not vague and uncertain. The clear and convincing evidence standard is more exacting than preponderance of the evidence but less exacting than beyond a reasonable doubt, and it requires that there [be] no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.

*State v. Jones*, 450 S.W.3d 866, 893 (Tenn. 2014) (citations omitted, cleaned up). Thus, to toll the coram nobis statute of limitations, the new evidence of actual innocence, if credited, should leave the court with no serious or substantial doubt that the petitioner is actually innocent. In assessing a request to toll the statute of limitations, the coram nobis court should first assume *arguendo* that the new evidence cited in the coram nobis petition is credible, and then determine whether it would clearly and convincingly show that the petitioner "did not commit the crime."[15] *Keen*, 398 S.W.3d at 612.

Another point of disagreement between the majority and the dissent in *Workman* was the length of time that had passed from the time Workman learned of the new evidence of actual innocence and the filing of his coram nobis petition based on that evidence. The dissent noted that Workman filed his petition more than a year after he learned of the new

the term that we adopt. However, the threshold required to toll the statute of limitations in coram nobis cases was not clear in *Workman* and has remained unclear in the years since. For completeness, then, we determine *both* components of the threshold that must be met to toll the statute of limitations, *i.e.*, both the definition of actual innocence and the standard the proof, if credited, must meet. As noted by the concurring opinion, though the parties offered argument on the standard of proof a petitioner should be required to meet, neither suggested we adopt a "clear and convincing" standard, nor was that standard discussed at oral argument. We agree it is always preferable to adopt a resolution to an issue that was specifically proposed by, or at least discussed with, the parties. But here, where both parties were heard on the overall issue, it is not inappropriate for us to exercise our discretion to adopt the clear and convincing standard. Doing so allows us to give trial courts the complete threshold a coram nobis petitioner must meet in order to toll the statute of limitations: whether the new evidence cited in the coram nobis petition would, if credited, clearly and convincingly show that the petitioner is actually innocent of the underlying crime, i.e., that he did not commit the crime.

[15] This analysis relates to the threshold issue of whether the statute of limitations may be tolled. If the coram nobis court decides to grant tolling for an untimely coram nobis petition, the analysis for relief on the merits of the petition is governed by the standards in the coram nobis statute, Tennessee Code Annotated section 40-26-105(b).

evidence, and argued his petition should be denied on that basis.[16]  *Workman*, 41 S.W.3d at 105–06 (Anderson, C.J., and Barker, J., dissenting).  The majority noted that Workman filed his petition "approximately thirteen months after discovery of the evidence at issue," and felt that this time interval did not "exceed the reasonable opportunity afforded by due process," particularly because Workman faced the death penalty.  *Id.* at 103.

"[W]e have not previously attempted to set an outer limit of reasonableness" for delayed coram nobis petitions that seek tolling of the statute of limitations, *Harris II*, 301 S.W.3d at 146, but guidance is needed.  While a judge-made tolling exception may not, strictly speaking, be subject to the coram nobis statute of limitations, we agree with the *Workman* dissent that the standard on when a petition seeking tolling must be filed should be informed by the statutory time limit.  In keeping with the narrow nature of the exception, a prisoner who seeks tolling of the coram nobis statute of limitations must file his petition no more than one year after he discovers the new evidence of actual innocence.  This standard aligns with the coram nobis statute of limitations, ensures that a convicted person who discovers evidence of actual innocence after expiration of the limitations period will have a reasonable opportunity to present his claim, and protects the interest of the State and of victims in achieving finality in the criminal justice process.  As the coram nobis court in this case observed, "[e]rror coram nobis is not a 'catch-all' remedy that enables convicted persons to 'litigate and relitigate the propriety of their convictions *ad infinitum*.'" *Harris II*, 301 S.W.3d at 148 (Koch, J., concurring in part).

In sum, if a petition for a writ of error coram nobis is not timely filed, and the petition seeks tolling of the one-year statute of limitations, the coram nobis court should first ascertain whether the petition cites new evidence discovered after expiration of the limitations period, and whether the coram nobis petition shows it was filed no more than one year after the petitioner discovered the new evidence.  If so, the coram nobis court should assume *arguendo* the veracity of the new evidence cited in the coram nobis petition, for the purpose of assessing whether to toll the statute of limitations.  To grant tolling, the coram nobis court must find that the new evidence would, if credited, clearly and convincingly show that the petitioner is actually innocent of the underlying crime, i.e., that

---

[16]  The dissent said:

> Assuming, without deciding, that the statute of limitations was tolled during the time that Workman was unaware of this evidence, the record in this case shows that more than one year, the time provided by the statute of limitations, has passed since he first became aware of the evidence.  Accordingly, he has had a reasonable opportunity to present his claims, and, therefore, due process is not implicated.

*Workman*, 41 S.W.3d at 105–06 (Anderson, C.J., and Barker, J., dissenting).

the petitioner did not commit the crime. *Keen*, 398 S.W.3d at 612. If tolling is granted, the coram nobis court may then proceed to address the merits of the coram nobis petition, under the standards in the coram nobis statute, Tennessee Code Annotated section 40-26-105(b).

Turning to the proceedings in the coram nobis court in this case, we note at the outset that the coram nobis court could have decided whether to grant tolling based on the face of Clardy's petition, without any discovery and without holding a hearing. *See Nunley*, 552 S.W.3d at 825–26. Because a petition for a writ of error coram nobis must be pled with specificity, "[j]udges anticipate that the petition itself embodies the best case the petitioner has for relief from the challenged judgment. Thus, the fate of the petitioner's case rests on the ability of the petition to demonstrate that the petitioner is entitled to the extraordinary relief that the writ provides." *Id.* at 826 (quoting *Harris II*, 301 S.W.3d at 150 (Koch, J. concurring in part)). If an error coram nobis petition is not filed within the one-year statute of limitations, it "must set forth with particularity facts demonstrating that the prisoner is entitled to equitable tolling of the statute of limitations[.]" *Nunley*, 552 S.W.3d at 829. Those facts must include "evidence of actual innocence discovered after expiration of the limitations period." *Id.* at 828–29 (first citing *Wilson*, 367 S.W.3d at 234; then citing *Harris II*, 301 S.W.3d at 145; and then citing *Workman*, 41 S.W.3d at 101)). The coram nobis court in this case could have denied Clardy's petition without a hearing if it determined that the evidence cited in the petition, if deemed credible, would not provide a basis for tolling the statute of limitations.

Here, the decision of the coram nobis court to hold a hearing is understandable given the State's rather surprising response to Clardy's petition. Contrary to the State's past position in the post-conviction proceedings that the ballistics report was *not* evidence of actual innocence, and despite the State's unwillingness in the coram nobis proceedings to say one way or another whether adding Dantwan Collier's affidavit transformed the ballistic report into evidence of actual innocence, the State conceded unequivocally that Clardy was entitled to tolling of the statute of limitations and consideration of his petition on the merits. The State apparently took this position irrespective of whether Clardy's evidence showed actual innocence.

The coram nobis court rightly noted that it was not bound by the State's concession and scheduled a hearing.[17] At the tolling hearing, the coram nobis court pointed out that

---

[17] The coram nobis court's order setting the hearing outlined the law to be applied:

> A petition is subject to summary dismissal if it fails to show on its face that it has been timely filed. *Nunley*, 552 S.W.3d at 828. Principles of due process, however, may preclude the application of the statute of limitations to bar a coram nobis claim. *Workman*

Clardy unsuccessfully litigated the ballistic evidence in the post-conviction proceedings, and it probed whether adding the Dantwan Collier affidavit amounted to new evidence that showed actual innocence. Both parties apparently took the position that, in initially deciding whether to grant tolling, the coram nobis court should not evaluate whether the claimed new evidence in fact showed actual innocence. Mr. Clardy's attorney stated: "Your Honor, our position is that we have to plead it with specificity, that if the interests in hearing these claims override the governmental interests, which [the State had conceded], then equitable tolling should be granted." The coram nobis court then asked the State its position:

> [State's attorney]: The State's position is that the petitioner has met the Nunley standards for equitable tolling to be the appropriate result here.

> The Court: The state takes the position that Mr. Clardy is actually innocent of this offense?

> [State's attorney]: No, Your Honor. The State is not prepared to take the position that Mr. Clardy is actually innocent–

---

*v. State*, 41 S.W.3d 100, 103 (Tenn. 2001). "Due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Id.* at 102 (quoting *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992)). To accommodate due process concerns, the one-year statute of limitations for a writ of error coram nobis may be tolled if a petition seeks relief based upon "new evidence of actual innocence" discovered after expiration of the limitations period. *Nunley*, 552 S.W.3d at 828. In the post-conviction context, the Tennessee Supreme Court has explained that "actual innocence" means "nothing other than that the person did not commit the crime." *Keen v. State*, 398 S.W.3d 594, 612 (Tenn. 2012).

The Petitioner was convicted of the offenses in question following a jury trial on July 9, 2007. The Court imposed sentence on September 12, 2007, and denied a motion for new trial on November 1, 2007. Petitioner's one-year statute of limitations for filing a petition for writ of error coram nobis expired one year later on November 1, 2008. *Payne v. State*, 493 S.W.3d 478, 484 (Tenn. 2016). The instant petition—filed on December 8, 2020, more than twelve years past the expiration of the limitations period—is untimely and must be dismissed unless the Petitioner can show that he is entitled to equitable tolling through the presentation of "new evidence of actual innocence discovered after the expiration of the limitations period." *Nunley*, 552 S.W.3d at 828–29.

*Clardy v. State*, No. 2006-B-1065, at 1–2 (Davidson Cnty. Crim. Ct. Mar. 22, 2021).

The State explained that, so long as the petitioner pled the new evidence with specificity, to show his diligence, the coram nobis court did not need to "get[] into the substantive merits of the actual evidence. . . ."

After the hearing, the coram nobis court issued a written order denying the petition based on the statute of limitations. It acknowledged that, in support of his claim of actual innocence at his post-conviction hearing, Clardy had presented evidence that the cartridge casing examination results led to Dantwan Collier as an alternate suspect, "[b]ut the trial court and Court of Criminal Appeals rejected that claim." The coram nobis court held:

> Petitioner argues that this Affidavit [of Dantwan Collier] establishes Petitioner's innocence because it effectively dispels any possibility that Dantwan Collier was Petitioner's accomplice in this case. The court disagrees for the reasons stated by the Court of Criminal Appeals [*Clardy v. State*, 2018 WL 5046032] and by the predecessor Judge [at post-conviction] in this case. Even taking the new affidavit at face value, it simply does not rule out or even seriously undermine, the *Petitioner's* involvement in the crime here. Moreover, Petitioner's counsel candidly acknowledged at the April 23 hearing that guns "do get passed around on the street." The significance of the ballistics evidence was previously considered in Petitioner's post-conviction proceeding. Error coram nobis is not a "catch-all" remedy that enables convicted persons to "litigate and relitigate the propriety of their convictions *ad infinitum*." *Harris*, 301 S.W.3d at 148 (Koch, J., concurring). The December 19, 2019 affidavit of Dantwan Collier does not amount to "new evidence of actual innocence" discovered after the expiration of the limitations period. *Nunley*, 552 S.W.3d at 828. Petitioner has thus failed to demonstrate that equitable tolling of the statute of limitations is appropriate.

*Clardy v. State*, No. 2006-B-1065, at 5 (Davidson Cnty. Crim. Ct. Apr. 27, 2021).

In our view, the coram nobis court's procedure and analysis was spot on. It cited the correct standard under *Nunley* and noted that the ballistics evidence had already been the subject of post-conviction proceedings that terminated in an appellate finding that the ballistics evidence suggested Dantwan Collier or Thomas Collier may have been involved but did not show Clardy was *not* involved. *Clardy*, 2018 WL 5046032, at *7. The only "new" evidence was Dantwan Collier's affidavit. The coram nobis court stated it was "taking the new affidavit at face value," that is, it assumed the assertions in the affidavit

- 23 -

were credited.[18]  Taking those allegations as true, the coram nobis court concluded that the affidavit did not "seriously undermine" Clardy's involvement in the crime.  *Clardy*, No. 2006-B-1065, at 5.

Thus, the coram nobis court first determined that the only "new" evidence cited in the petition, discovered after the limitations period ran and within one year before the filing of the coram nobis petition, was Dantwan Collier's affidavit.  Then, to assess whether to toll the statute of limitations, the coram nobis court assumed *arguendo* the veracity of the new evidence cited by Clardy.  The coram nobis court determined that the new evidence would not, if credited, show Clardy was actually innocent of the underlying crime.  For that reason, the coram nobis court dismissed Clardy's coram nobis petition as untimely and did not address the merits of the petition under Tennessee Code Annotated section 40-26-105(b).

We agree with the coram nobis court's assessment of Clardy's new evidence.  As noted in the post-conviction proceedings, the ballistics evidence did not show Clardy was not in possession of the firearm when the underlying crime was committed.  *Clardy*, 2018 WL 5046032, at *7.  The Dantwan Collier affidavit did not change that.  The new evidence cited by Clardy in his coram nobis petition would not, if credited, clearly and convincingly show Clardy is actually innocent of the underlying crime, i.e., he did not commit the crime.  *Keen*, 398 S.W.3d at 612.

We hold that Clardy failed to present in his petition new evidence of actual innocence discovered after the expiration of the limitations period, and failed to establish he was entitled to tolling of the coram nobis statute of limitations.  *See Nunley*, 552 S.W.3d at 830 (citations omitted).  The Court of Criminal Appeals erred in reversing the coram nobis court's dismissal of the petition.

---

[18] Clardy argues it would be erroneous for us to adopt a standard that permits the coram nobis court to evaluate the "new" evidence based on the petition.  He contends: "Had the parties known that establishing the innocence claim on the merits was required, they almost certainly would have approached the hearing differently."  Here, the coram nobis judge did not make credibility determinations; she assumed the veracity of the evidence and assessed its bearing on actual innocence under that assumption.  Of course, as noted above, the coram nobis judge *could have* skipped any hearing whatsoever and made her decision based on the face of the petition.  *Nunley*, 552 S.W.3d at 825.  Coram nobis petitioners should assume they will get no hearing and that the fate of their case turns on whether the petition demonstrates on its face that they are entitled to the relief sought, including tolling of the statute of limitations.  *Id.* at 826.

**CONCLUSION**

We agree with the reasoning and decision of the coram nobis court below. Accordingly, we reverse the decision of the Court of Criminal Appeals and affirm the decision of the coram nobis court dismissing the petition as untimely.

_____
HOLLY KIRBY, CHIEF JUSTICE